**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

DOROTHY J. HARRIS                                                                                              PLAINTIFF

V.                                              NO. 2:08CV00078 JTR

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                                                   DEFENDANT

**MEMORANDUM AND ORDER**

**I.  Introduction**

Plaintiff, Dorothy Harris, has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Disability Insurance Benefits ("DIB").  Both parties have filed Appeal Briefs (docket entries #11 and #14), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater,* 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g).  While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision."  *Haley v.*

---

[1] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

*Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

On May 31, 2005, Plaintiff filed an application for DIB, alleging disability since May 27, 2005, due to diabetes, cholesterol, high blood pressure, and anxiety.  (Tr. 48-50, 73, 83.)  After Plaintiff's claim was denied at the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge ("ALJ").  On August 23, 2007, the ALJ conducted an administrative hearing, where Plaintiff and a vocational expert ("VE") testified.  (Tr. 236-57.)

At the time of the administrative hearing, Plaintiff was 48-years old and had a high-school education.  (Tr. 12, 239.)  Her past relevant work was a job as a cafeteria cook.  (Tr. 252.)

The ALJ considered Plaintiff's impairments by way of the familiar five-step sequential evaluation process.  Step 1 involves a determination of whether the claimant is involved in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i) (2006).  If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience.  *Id.* at § 404.1520(b).

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment.  *Id.*, § 404.1520(a)(4)(ii).  If not, benefits are denied.  *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, §

404.1520(a)(4)(iii).[2]  If so, and the duration requirement is met, benefits are awarded.  *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work.  *Id.*, § 404.1520(a)(4)(iv).  If so, benefits are denied.  *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience.  *Id.*, § 404.1520(a)(4)(v).  If so, benefits are denied; if not, benefits are awarded.  *Id.*

In his October 22, 2007 decision, the ALJ found that Plaintiff: (1) met the Act's insured status requirements; (2) had not engaged in substantial gainful activity since the alleged onset date; (3) had "severe" impairments consisting of controlled hypertension, controlled diabetes, obesity, and chronic pain that did not meet a Listing; (4) was not fully credible; (5) had the RFC to perform sedentary work, with the ability to "lift-carry up to 10 pounds occasionally and 10 pounds frequently," stand/walk up to 2 hours in an 8-hour day, sit for 6 hours in an 8-hour day, alternate between sitting and standing as needed, "push and/or pull 10 pounds frequently, or 10 pounds occasionally," and the ability to occasionally balance, stoop, bend, crouch, kneel and crawl; (6) could not return to her past relevant work[3]; (7) was 48-years old, with a 12th-grade education; and (8) could perform other jobs existing in the national economy as identified by VE testimony.  (Tr. 19-20.)  Thus, the ALJ concluded that Plaintiff was not disabled.  (Tr. 20.)

---

[2] If the claimant's impairments do not meet or equal a Listing, then the ALJ must determine the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence.  *Id.*, § 404.1520(a)(4).  This RFC is then used by the ALJ in his analysis at Steps 4 or 5. *Id.*

[3] VE testimony established that Plaintiff's past relevant work was performed at the medium exertional level.  (Tr. 252-53.)

On July 1, 2008, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 3-5.) Plaintiff then filed her Complaint appealing that decision to this Court. (Docket entry #2.)

## II.  Analysis

In Plaintiff's Appeal Brief (docket entry #11), she argues that the ALJ erred: (1) in assessing her RFC; and (2) in failing to adequately explain the basis for the RFC assessment. Before addressing the merits of these arguments, the Court will briefly review the relevant evidence.

**A.     Hearing Testimony and Medical Evidence**

Plaintiff testified that she had uncontrolled diabetes, and that a "usual" blood sugar reading was 236. (Tr. 242.) She was taking Glucotrol and had been previously treated with insulin injections. (Tr. 243.)

Plaintiff's pain was her primary problem that prevented her from working. (Tr. 244.) Her back hurt the most, but she also had pain in her neck, shoulders, legs, and hands. (Tr. 243-44.) Plaintiff also had numbness in her right hand that prevented it from bending. (Tr. 245.)

Plaintiff was 5'9" and weighed 214 pounds. (Tr. 246.) She could sit for an hour-and-a-half, stand for 30 minutes, and walk for 30 minutes. She could lift about 10 pounds, but had to use both hands to lift a gallon of milk because of problems with her right hand. (Tr. 247.) Because of problems with her hands, she could not work in the yard or sew, and it took her a long time to button her clothes. (Tr. 248.) In a typical day, Plaintiff stayed on the couch and watched TV. (Tr. 249.)

On July 9, 2004, Plaintiff went to the White County Medical Center ER with new-onset

diabetes. (Tr. 98.)  Her blood sugar was 771, and she was diagnosed with diabetic ketoacidosis.[4] (Tr. 98-105.)

The remaining medical records consist mostly of Plaintiff's follow-up visits with White River Rural Health Clinic and Cotton Plant Medical Clinic. (Tr. 119-31, 136-54, 185-232.) After Plaintiff began her medical treatment for diabetes, the substantial majority of her blood-sugar readings were normal. Plaintiff was also followed and treated for hypertension, depression, anemia, headaches, and shoulder pain. Plaintiff was treated medically with various drugs including Glucotrol, Avandamet, Accuretic, aspirin, Lipitor, Prozac, Hyrdrocodone, Naproxen, and Amitriptlyine.

On September 4, 2005, Plaintiff underwent a consultative psychological examination. (Tr. 164-65.) She was diagnosed with adjustment disorder, with depressed mood, but did not have two or more areas of adaptive functioning with significant limitations. (Tr. 164-65.) Although Plaintiff complained of shoulder pain at various times, she was noted to have a normal range of motion. (Tr. 221.) On January 11, 2007, Plaintiff's diabetes was noted to be "in good control." (Tr. 228.)

**B.    Plaintiff's Grounds For Reversal**

    **1.    The ALJ Erred In His RFC Analysis**

Plaintiff argues that the ALJ erred in assessing her RFC for sedentary work. Specifically, she contends that the medical evidence was consistent with her complaints of disabling pain, as well as her complaints of manipulative limitations in her hands.

In arguing that the medical evidence supports her claim, Plaintiff points out that she sought emergency room treatment for diabetes, followed with repeated treatment for her diabetes, and was

---

[4]Plaintiff was treated with sliding scale insulin and was eventually diagnosed with type II diabetes.

prescribed medication to control her blood sugar and help with her pain. (*Pltff's App. Brf.* at 8.) According to Plaintiff, "[t]reatment notes specified on numerous occasions that [she] suffered from diabetes and that she experienced chronic pain in conjunction with her illness." (*Pltff's App. Brf.* at 8.) Plaintiff also emphasizes that, if her doctors believed that she was exaggerating or malingering, "it is highly improbable that she would have repeatedly been prescribed an aggressive prescription medication treatment regimen that included Accuretic, Glucotrol, Naproxen, and Hydrocone." (*Pltff's App. Brf.* at 8.)

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). However, in resolving that question, the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) (quoting *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000)).

In this case, the ALJ developed the medical evidence and the reasons for discounting Plaintiff's credibility. While Plaintiff characterizes her prescribed medication regimen as "aggressive," the medical record reflects that her physicians pursued a conservative course of treatment. Plaintiff does not point to medical evidence where any treating or examining physician ever placed any restrictions or limitations on her. Additionally, Plaintiff was not recommended for surgery or for physical therapy. This medical evidence is consistent with the level of functioning encompassed in the ALJ's RFC determination, which accounted for Plaintiff being able to perform only sedentary work.

As to Plaintiff's argument that the ALJ erred in discounting her credibility regarding her

complaints of pain and hand limitations, there is nothing in the medical record suggesting that Plaintiff's diagnosed conditions caused the level of pain or limitation described by Plaintiff. To the contrary, it appears that most of Plaintiff's examinations were normal and that her doctors prescribed a conservative course of treatment.

After reviewing the complete record, the Court concludes that the ALJ properly evaluated Plaintiff's credibility using the factors identified by the Court in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir.1984). His decision makes it clear that he took into account matters such as her daily activities, medications, and the medical record before deciding that Plaintiff's subjective complaints were not fully credible. Therefore, the Court concludes that Plaintiff's first argument is without merit.

### 2. The ALJ Erred By Failing To Explain The Basis For Plaintiff's RFC

Plaintiff's second argument is that, in his decision, the ALJ did not adequately explain the basis for his RFC assessment.[5] The Court disagrees with Plaintiff's reading of the ALJ's decision.

The ALJ developed the medical evidence and the reasons for discounting Plaintiff's credibility. While Plaintiff was diagnosed with diabetes, among a number of other conditions, her physicians only prescribed a conservative course of treatment. Plaintiff points to no evidence where

---

[5]In her Appeal Brief, Plaintiff states this argument as follows:
> Here, the ALJ failed to build that "logical bridge" from the medical evidence to its ultimate [RFC] findings. Indeed, even the most thorough reading of the ALJ's decision would not shed any light on how the ALJ arrived at its conclusion that [Plaintiff] could perform the fine or gross motor manipulation or the reaching required to perform the requirements of sedentary work. The ALJ's cursory recitation of the medical evidence alone is insufficient because the decision does not explicitly delineate how that evidence supports its [RFC] finding.

(*Pltff's App. Brf.* at 11.)

any treating or examining physician ever placed any restrictions or limitations on her. As noted earlier, this medical evidence is consistent with the level of functioning encompassed in the ALJ's RFC determination, which accounted for Plaintiff being able to perform only sedentary work. Thus, the Court concludes that substantial evidence supports the ALJ's RFC determination, and that the ALJ's decision contains a sufficient explanation of how he arrived at that determination.

### III. Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996), *superceded by statute on other grounds*; *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also, Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and Plaintiff's Complaint is DISMISSED, WITH PREJUDICE.

DATED this 4th day of June, 2009.

_____  
UNITED STATES MAGISTRATE JUDGE